and her official capacity as Secretary of the Department of the Interior et al. Ms. Burden for the appellants, Ms. Krantz for the appellees. Good morning. Good morning. May it please the Court, I'm Doug Burden for Appellants, Safari Club International, National Rifle Association of America. With me at Council table is Anna Seidman with SCI and Michael Jean with the NRA. I reserve two minutes for rebuttal. I'd like to address two interrelated issues. First, finality and then standing and mootness. For both, the key is that SCI and NRA are challenging final, past, underlying actions to the 2014 enhancement and non-detriment findings. These past actions did not start in 2014 and they did not end in 2014. Also common to both is the fact that applying for a permit would be futile here because the hunters do not have the information that the service is demanding. Can we take them in order? If I remember correctly, the District Court seemed to assume that if you can dispose of finality, you don't have to address standing. As a Steel Co. exception, I haven't seen any cases that say that that's a threshold issue of the sort that bypasses the Steel Co. rule. So it seems to me you've got to decide standing first. Do you have standing? If so, what's the argument? And then, of course, related to it is the question of mootness. Those are the threshold issues that I think we must address. Finality is around there, but if you get over the standing, mootness question. Yeah, they are related, and I agree with you. I'm uncertain about what the Court is supposed to do first when, but I was just following the lead of the District Court. But I can start with standing. The arguments have some of the same elements to them. So the point is that we are challenging actions that did not start in 2014. They relate to the services requirement that the hunters show an enhancement finding at all. We argue in our complaint, Claim 7, that that is not required at all for elephants from Tanzania. And second is that we, our Claim 8, is that for the non-detriment finding, the service is supposed to look at the impact of the importation on the species and not look at the impact of the hunting and the hunting program on the species. So these are two fundamental legal errors that started in the past. So what is the concrete injury? The Supreme Court this past spring went out of its way to separate particularity and concreteness and put a big emphasis on concrete, even if you can meet particularity. They're saying something to us. That is, you better find the concrete. What's the concrete injury here? No one applied for anything. No one went hunting. No one did anything. That's the other side's argument. Right. So what's the concrete injury? Well, there's two injuries. One is that because of these two illegalities, and for the purpose of the standing, the court assumes that claimants are correct and the agency shouldn't have made an enhancement finding at all and should have looked at the impact of the importation, not the hunting. So the impact on the hunters, first, in deciding whether to take one of these hunts, which costs a lot of money, they have to look at what they're showing is. And when the service made the negative findings, that placed a burden on the hunters to come up with information about elephant mortality versus elephant population rate. That's what the service wanted before it would change its mind. Wasn't that always in the rule? It's just they decided to enforce it now? Yeah, it's always been in the rule. But until 2014, the service had made positive findings, which relieved the hunters from the obligation of showing that. I mean, I'm posing the arguments the way I think the other side is posing them to see what your answer is. How can there be a concrete injury if you never went to find out whether or not the rule that has always been there, now reportedly going to be enforced differently, will be used against you? Well, it has been used against them because the service made— No, no one sought—none of your plaintiffs sought a permit. You sat on your procedural rights, so to speak. Your argument is, well, we did because the standard looked too hard. Well, the standard was they were asking for information that the hunters didn't have. So why go hunt an elephant? Why go through the process of applying for a permit and trying to overcome these new burdens on them when it was futile? They didn't have the information. And they shouldn't—our claims are that they shouldn't have had to make that showing at all. And isn't that argument independent of your argument that the agency should never have required an enhancement or detriment finding here? In other words, maybe I misunderstood your arguments. I thought you were arguing that even if those findings were required, you left standing because you were, in effect, denied a permit. No. No? You're not arguing that? None of our members were denied a permit. I know that. I said in effect. That is, it would be futile to have applied for a permit. Oh, yeah, I'm sorry. I misheard you. So am I right about that? Yes, that's one of our arguments. Well, but is—so am I—do I need to agree with you? Is that independent of your argument that—here. Is that—okay. Count six, you say these are legislative rules that require notice and comment. Count seven, you say that the argument you're talking about here, that requiring—retaining an enhancement finding violates the Act. And eight, is it that they apply the wrong standard? Those are three counts. But you're also arguing, aren't you, that you were—it was futile to even apply for a permit, correct? Yes. And are those arguments all related to each other or not? In other words, if you're right that it was futile to apply for a permit, do you have standing? Yes, that would be an— You have standing to raise those other issues, correct? Yes. Okay. We also have standing to raise those, regardless of whether applying for a permit would be futile, because— I understand that. But if you're right that there's a futility exception and that it applies here, under your theory of standing, right? Yes. Okay. And what is your answer to their mootness argument? Well, because we're challenging these underlying claims— 2014 is gone. No one went back in. No one can say, I was denying anything because they didn't do anything. So, arguably, it's moot. The case is moot. Now, what is—are you saying it's capable of repetition? Because it's not. If you would have used the process, you would have gotten review. Well, I think it is capable. But, first, the reason that it's not moot is because we are challenging past actions that underlie the 2014 decision. But past actions can moot out. Yeah, but they don't. They still apply in 2015, 2014. Well, you can't. No one can get a permit. No one even asked for a permit in 2014. Right. So, their argument is there's nothing here. And it's not capable of repetition and evading review. You'll always get review. Their argument is—I'm giving you their argument, so I'm curious to hear—their argument is you'll always get review. This isn't like the pregnancy case. I mean, if you come and use our procedure, you'll get full review and full litigation. It's not going to go away. So, now, what's your answer to that? Well, first is that we're challenging these underlying actions that don't go away with 2014. So, they're not moot. It's like the Defenders of Wildlife bobcat case, which involved a non-detriment finding for the export of bobcats. The plaintiffs were trying to stop the exports for that particular year. But included in that, they had underlying claims or challenging policies underlying the non-detriment finding. Yeah, but see, what they're arguing is that someone had hunted in 2014 and then been denied permission to come in. You know, that claim is fully litigatable. You can say, wait, we have the trophies. We want to bring them in. They were denied a permit. You've got standing. It's not moot because no matter what year it is, that 2014 claim is there still to be litigated. But you don't have that picture. I understand that. And that is one way to have standing and challenge these underlying actions. But those underlying actions don't disappear with 2014. They're still here. What would you say? I want to just play it out in my head to make sure I understand what you're arguing. Your argument, I guess, would be that if in 2015 they tinkered with this regulation or rule or interpretation so that it was different from what they said they were doing in 2014, wouldn't that moot you out? No. What I'm saying is... Wait, wait, wait. How not? You have no one who went hunting in 2014, no one who was denied a permit, nothing. And now in 2015, this is my hypothetical, they changed the rule. You think you can litigate about 14 years? Oh, if they changed the rule? Yes. Well, if they changed it significantly and they made a positive finding, then we wouldn't need to. No, no, no. They just changed the rule. And they say it's not even the same rule, and they want it in 2014 because no one did anything. I'm not sure what you mean by change. What rule are they changing? They're changing the enhancement rules, who has to prove what, et cetera. Then we'd have a different case. But now, in 2015 and 2016, these two past underlying actions are still affecting the hunters because they're putting burdens on those hunters, regulatory burdens which recite cases, crop life and others, that can create sanding. And because of those two underlying actions, it's much less likely that the services ever going to, with Tanzania, make positive enhancement findings and positive non-detriment findings. And that's what discourages these hunters from even undertaking the hunt because they know they can't bring back the trophy. Now, you want to hook this general argument to try and dispose of exhaustion and finality, right? Because there are a lot of cases that suggest that there isn't any final agency action here. Well, again, the two underlying actions are final. They made them. It's the consummation of the decision-making process. Nothing indicates they're going to revisit the requirement to show enhancement and the requirement that non-detriment is based on the hunting and not the importation. See, here's the worry on the court, because the exhaustion, finality and ripeness all kind of come into play in this case in a very strange way. And one of our worries normally would be, why would we get ourselves in the middle of this when you didn't use the process? We're hanging a whole lot on futility. That is your claim that you can't make the case. We haven't seen you try. And so even if you have standing and you don't have a moot case, within the compass of exhaustion, finality and ripeness, courts would normally worry, well, they didn't even go and try. We're not sure that they really are making sense when they say they could never prove it. That's self-serving for you to come in and say we could never meet the standard. And it's a standard that's always been there. They just decided to enforce it now. Well, I respectfully disagree that they just decided to enforce it. They changed their findings for 20 years. But they've always had that authority, right? Yes. Okay, so that's the kind of case that worries me. Sitting on the bench, are we supposed to get in the middle of this now when they didn't go and see what that really meant by playing out a process that was available to them? But that process would not have addressed the two underlying issues. What the service said, we have an open— What are the two underlying issues? Whether to require an enhancement permit. Why would you argue that? You're a good attorney. The first thing you'd say is you can't mean to say what you're saying, are you? And get a ruling on that. They've never—what they said is we will accept new information. If you have new information, come to us. All right. And we will look at that new information. And if you have overcome our negative finding, if you can show that the hunting enhances the survival of the species and, in their wrong view, the hunting means that there's no detriment to the species, then we'll reconsider. Otherwise, we're not even going to consider your permit. That's what they said. So those underlying factual issues were not at issue. My time is up. I'll reserve everything else for rebuttal unless there's more questions. David, did you have a question? Okay. Good. Thank you. Counsel for Eppley. Good morning. My name is Erica Kranz. I'm representing the federal parties. Ms. Peele, I'm with me at counsel's table. This is Russell Hewson for the Department of the Interior. The United States doesn't directly regulate the killing of elephants by sport hunters in other countries. Government merely regulates the import and the trade of trophies of those animals. For elephants killed in Tanzania, CITES and the laws implementing it require hunters wishing to import such a trophy to obtain an import permit. Before it can issue such a permit, Fish and Wildlife Service has to be able to make two positive findings, one, that the import will be for purposes not detrimental to the survival of the species, and, second, that killing of the animal whose trophy is intended for import would enhance survival of the species. Now, plaintiffs in this case are organizations that represent sport hunters who have shown some interest in hunting elephants in Tanzania and who could have but never actually applied for a permit to import any trophies. Do you agree that there's a futility exception to the requirement for filing a permit? That is, if they could show it was futile, they would have standing? There has been some law suggesting that there may be, I don't know if I would call it an exception, maybe a consideration in assessing standing. It certainly doesn't relieve the burden that plaintiffs must establish, the concrete and particularized injury. But you're not answering my question. My question is, and your brief was confusing on this to me, are you, as the government's position is, that there is no futility exception, or that there is but that the appellant here has not satisfied? Well, I don't think there is a futility exception to standing. Even the case you cite, the Albuquerque case you cite, says there's one. Well, if they can actually show that they, if they had applied, they would have been absolutely denied. I suppose you could call that a futility exception. But if they had applied, we wouldn't have a problem. If they had applied and they had been denied, you would concede that they have standing, that they've been injured, correct? Yes. Okay, well, the case you cite, Albuquerque, plus many of our other cases, are quite clear about a futility exception. So it seems to me to prevail, you need to argue that it wasn't futile. Well, it certainly wasn't futile. I mean, to the extent there is a futility exception, the standard is very high. They have to show that they absolutely would have been denied. Really, I mean, the Ninth Circuit has characterized this as a Can we just talk about the facts of this case instead of what the Ninth Circuit says? Am I right that for them to have obtained a permit, they would have had to show that the situation regarding elephants in Tanzania had changed significantly, correct? That's what Fish and Wildlife Service wanted to see. They saw country-wide problems. So the answer to my question is yes, right? Yes. They would have to show, and they have no control over that. I mean, why would they have no control? That's not something within their control. This is a question about conditions in Tanzania, and they're saying, look, what they're asking us to show is impossible because conditions in Tanzania haven't changed. I don't know if they're precisely arguing that. They seem to be saying, gosh, Fish and Wildlife Service doesn't have this information. How could we possibly get it? Well, either way, doesn't that mean it's fuel? Well, this is a sophisticated organization. You just told me that Fish and Wildlife doesn't have it either. But Safari Club has close ties to the You're missing my point. If the situation in Tanzania has not changed, they couldn't show that it has changed, right? I suppose not. Okay. So it's fuel, isn't it? I don't understand why it doesn't clearly fall within the futility exception. Well, they still need to try, right? The agency retains But now you're backing up to say there's no futility exception. I don't think we have evidence that the situation in Tanzania in 2014 hadn't changed, or at least we didn't at the time. See, you're changing your argument in almost every sentence. Is the government's position that the situation had changed or might have changed in Tanzania and it could have shown it? Well, stepping back into the time where this finding was relevant, in 2014, Fish and Wildlife Service did say, basically, we invite you to provide us with new information. It gave a list of types of information it would consider and said other relevant information can be submitted. So I don't think at that time we knew one way or the other whether conditions had changed. Let me ask you a specific question about the enhancement finding. The detriment finding clearly says, as you point out, that it says that the parties can submit additional information, right? Do you know where the enhancement finding says that? Enhancement finding itself doesn't include that language. But the actual permit application that an applicant fills out does specifically say that if an applicant has additional information to allow the service to make that enhancement finding, they should submit it along with their application. I'm struggling with your argument because it seems to me you're conflating everything, exhaustion, finality, standing. The standing question is, do they have a concrete injury? And if an agency has a procedure and you're someone who routinely uses it, and that's not in doubt, and they change how you're going to operate pursuant to their procedures and they adopt an onerous requirement, and there's no doubt, I don't think listening to you, you're doubting that this requirement is not going to be easy. You're saying you think they work really hard, they may be over, but it's onerous. How can there be any question on standing? If they're regular parties, it's very, very different from what they normally would be required to do. Agency has changed it. They're hurt. The causation is there, addressability is there, and why do they have to go through it? That's the exhaustion finality stuff. Why do they have to go through anything, and why does utility even matter? If the standard has dramatically changed and they're injured, we're past that door, it seems to me. Well, I wouldn't say the standard has changed. The facts have changed. No, no, no, no. The requirements, what it is that they have to do coming into the same procedure that they've always used before. The requirements haven't changed, though. Maybe the way that they're playing out as a practical matter has changed. Or your enforcement of the requirements have changed. I suppose you could put it that way.  The enforcement standards are dramatically different, right? It's not exactly an enforcement standard. It's factual. It's what they have to do in order to be able to get to Prunette is different, right? They have always had to provide information. As a practical matter, the service has made these generic findings that it then applies to individual fairness. Right, and the service said we're not going to do it anymore. You have to do it. The service let the interested parties know that they had been thus far unable to make positive findings in early 2014. I don't know why you're fighting this. I mean, it's perplexing to me on the standing point. It seems to me you surely have. I hear you now. I'm not so persuaded. But what about mootness? You make an argument you really think is moot? I do think it's moot. They're fighting the change in the regulatory scheme. That's their point. We're only fighting the change in the regulatory scheme. This is not moot. That's an ongoing question. And you haven't changed the regulation. You haven't changed how you're going to enforce it. Well, the 2014 findings, as you've noted, applied only to 2014. There have been new findings made for 2015. I believe new findings for 2016 are in process. Now, each of those findings is going to be based on new information. It's going to be based on a new administrative record. Now, they have these underlying challenges, but those challenges are best addressed in the context of an actual live dispute about an actual trophy they'd like to import. So let's say a plaintiff in 2015. You're kind of wandering over to the other side. That is the exhaustion, finality, right? I do see them as related. Yeah, but it's not really moot, is it? I think it is moot. But the question on the regulatory requirements is still there. You haven't changed anything in 2015 and 2016 on that. They still have to do what you said they had to do in 2014. The service has made negative findings for 2015, yes. Can I ask you, while we're talking about mootness, the Safari Club cites in its reply brief defenders of wildlife as a decision by this court, defenders of wildlife versus endangered species scientific authority. Do you know of that case? Let me find out. My question is why doesn't that completely resolve this issue here and require us to hold that this case is not moot? I mean, it looks to me identical to this case. It was a challenge to a nondetriment finding in a specific year, and we found it wasn't moot for two separate reasons. One was the complaint could be construed far more broadly to be challenging the standards, just as this case does, just as this complaint does. And secondly, they said it was capable of repetition in the innovating review. I don't see how that case isn't on four square with this case. I believe in that case, and I am talking about different doctrines here because I think they are really tangled up in this case. I think in the defenders of wildlife case there was a more concrete injury that would persist over time. We don't have that here. What is the difference? There they were challenging the standards the agency is applying. Here the complaint in three separate counts challenges the standard the agency is applying. It's exactly the same thing. What you need to keep your case alive is some continuing interest in the outcome of the litigation in a concrete way that relates back to standing. And why don't they have that? So they don't have that here because no one applied for a permit. There is no elephant trophy awaiting import. If you're wrong on standing, if they satisfy the futility requirement, or as Judge Edwards suggests, maybe there is an even one, they still have standing, even if they have to get to it. We're asking you, we're both asking you about mootness, and true, Do you see any way to distinguish this case? No. If you found that there was a continuing concrete injury, then... Then you agree this case is dispositive. It seems to be. Okay. So let me ask you about it. Did you have other questions on mootness? No. Okay. I want to ask you about another case. You argue the government says there's no final agency action. Are you familiar with a Supreme Court case called Hawks versus U.S. Corps of Army Engineers, which was decided after the briefing in this case? No, I'm not. All right. Okay. Do you have any other questions? Well, perhaps we should talk about final agency action just to wrap up. Well, then maybe I better tell you about Hawks. Okay. Hawks came after this. I'm sort of surprised that the appellant didn't file a 28-J letter on this case. It says the possibility that an agency may revise a conclusion based on new information is a common characteristic of agency action and does not make an otherwise final decision non-final. I mean, you know, I realize you're at a disadvantage. You don't know the case. But to be honest, I don't see why that case isn't as dispositive as the other case I mentioned. Well, I think I can speak to it. Sure. I don't believe that this agency action would be final in the first place. It's not the consummation of agency decision-making. As plaintiff even characterized it this morning, it's an underlying finding that has been applied in a permit process where the agency does reach a final decision. And relatedly, that means it's not the kind of decision from which rights or obligations are defined or from which legal consequences follow. Because these findings don't by themselves do anything. Only the permit does something. Well, that's what they're suing about. They're claiming they were denied a permit. And if we think that their failure to apply for one is excused based on the futility exception, if we assume that's the case, then why is the agency action not final? If you truly believe that this is a final agency action and that finality and that futility applies, then I suppose it is final agency action. But we disagree with both of those. I understand that. But you would agree that if we think there is Article III standing because it would have been futile, that there is final agency action here and the case is not moved, correct? You agree with both of those? I suppose so, yes. Okay, great. Thank you. See, I mean, you're painting different pictures of the case, and that's why we're struggling over it. Their picture is this is about a regulatory scheme, which you've changed to our disadvantage. And your picture is, no, this is just about 2014 permits, which they didn't seek. And we have the authority. This is the same process we've always used. They may think it's a little hard. I mean, the question is whether they're right. The regulatory scheme has really changed to their detriment. Right, and even in cases where agencies have issued guidance or, let's say, the plaintiffs think that the writing is on the wall about how a permit decision will come out, this Court has still said you've got to go through the process and get a final decision. Some of your guidance cases don't go all the way there, and there are a bunch of guidance cases that say you can call it a guidance, but it's more than a guidance here. The cases that go against us are ones where the agency has expressed an unequivocable position about what's going to happen. It's essentially bound itself and applicants or regulated parties. This is not that kind of case. Your worst picture is they kept doing it in 2015 and 2016. Right, but the agency still has discretion over how it's going to apply these findings, and that's why it's invited applicants to submit information. See, what if it was the case that they had said what they said? You know, we may push a little burden on you, but we understand it might be troublesome for you, so we want to leave it open. We don't want you to feel anxious about this. You know, come to us, tell us what you've got. We'd prefer that you bring it, but if you don't, then you're going to win easily on ripens. But that's not what they did. Well, I think we're in some gray area between that and an absolutely definitive statement, right? So I think National Mining Association is probably our closest case, where even if it's clear this is going to be difficult, you've still got to go through the process that exists. And, of course, we have Markham v. Salazar, which is really pretty similar. I mean, it's another import permit case. It's quite recent. And, you know, the plaintiffs there were challenging findings in the context of a permit denial, but they were still making these kinds of broad procedural claims. This court said that those plaintiffs didn't have a right claim, even though they had already been denied a permit. You mean in National Mining? Is that what you're talking about? I'm talking about Markham v. Salazar. Plaintiffs didn't have a right claim, even though they had received a permit denial and then started the administrative appeal process. To me, it would seem absurd to conclude that these plaintiffs have a right claim, where they failed to even start that process. In a way, is that the one where Markham is the one where there was still an administrator who had yet to speak? That's right. Well, that's a different case. We were being duped there by the agency as well. I mean, didn't I write that? You did. We were being duped there. I mean, we were furious because the agency let it go up when it shouldn't have gone up because there was still an agency administrator who had it and was working it. That's a very different picture. Well, I mean, the thing that I take from that is that you held correctly that that wasn't right. I always tried to. That wasn't a right claim because there was still an administrative process left. No, but if you had that here, it wouldn't be right. That's right, but they haven't gone to a process. It's very different looking than Markham. They have completely refused to engage in the process that exists. The question is if you can challenge a regulation because the scheme is now different and very burdensome and it would be futile. You have standing and it's not. You got it. You understand our concerns. I do. I see my time is up. All right. Thank you. Council questions? I'll just make a few points. First, I want to point out that the hunters not going to Tanzania and hunt in 2014, 2015, is exactly what the Fish and Wildlife Service wanted when they announced these new findings. And Markham is distinguishable for many reasons, but including in that case, they were not challenging underlying past final agency action. They were challenging that the decision itself was arbitrary and capricious, and that is something that could have been resolved in that appeal to the director, which had not finalized yet. Our futility is in both showing the facts needed to overcome these negative findings and in changing the two underlying past final agency actions. Neither one of those we're going to change. We're not going to be resolved in the permit process. We agree the Defenders of Wildlife case is totally on point and addresses standing in mootness. The Hawks case is important because it shows that even in that case, it was a jurisdictional determination about waters in the United States. It was a very early part of the whole wetlands permitting process, but nonetheless the Supreme Court determined it was sufficiently final because it affected, it hurt those permit applicants early in that process and increased their regulatory burden. And finally, as far as guidance not being final. You know, it would have been helpful if you had filed a 28-J letter on that because then the government would have known you planned to rely on it. Yeah, I agree. I apologize for that oversight. We should have. I didn't recognize the connection at the time. And finally, regarding guidance mentioned, the Appalachia Power Company case that we cite in our brief is a great example of a guidance document that is sufficiently final and affects the regulatory scheme and burdens on the applicants in that case. All right, thank you. We'll take the case under advisement.
judges: Rogers, Tatel, Edwards